UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 15-12665-RGS

ERIC BEASLEY

v.

LOWE'S HOME CENTERS, INC., MARGARET MILLER, MICHAEL
MEDICO, and UNNAMED LOWE'S EMPLOYEES

MEMORANDUM AND ORDER ON
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

May 3, 2017

STEARNS, D.J.

Plaintiff Eric Beasley worked in the plumbing department at Lowe's Home Center in North Weymouth, Massachusetts for approximately three years. From May of 2011, until he submitted his resignation on June 17, 2012, Beasley claims that he was "subjected to a campaign of racial slurs, repeated threats to kill him, humiliating retaliation for availing himself of Family and Medical Leave benefits, . . . repeated race discrimination . . . and adverse employment actions in retaliation for his discrimination complaints." Pl.'s Opp'n at 1-2. Beasley filed a charge of discrimination with the Massachusetts Commission Against Discrimination (MCAD) in 2012. He filed this Complaint on June 19, 2015. The Complaint asserts seven claims against Lowe's, Margaret Miller (a Lowe's human resources manager), and

Michael Medico (Beasley's former supervisor). They are: Race Discrimination (Count I); violations of the Family Medical Leave Act (FMLA) (Count II); violations of the Massachusetts Civil Rights Act (MCRA) (Count III); Interference with Advantageous Contractual Relations (Count IV); Defamation (Count V); Retaliation in violation of Federal Title VII and Mass. Gen. Laws ch. 151B (Count VI), and Outrage/Infliction of Emotional Distress (Count VII). Defendants move for summary judgment on all claims, arguing that they are time-barred, lacking in factual support, and improperly pled. The court heard oral argument on the motion on April 20, 2017.

BACKGROUND

Beasley's Complaint contains twelve pages of tenebrous allegations largely untethered to dates or context (the Opposition Memorandum is of little help in deciphering the claims). As best as can be discerned from the hodgepodge of pleadings and exhibits, the facts are as follows. Beasley began working for Lowe's, a national retailer of home improvement products, in October of 2009, as a "Plumbing Pro." In June of 2010, he was promoted to the position of "Sales Specialist." Defendant Medico became his supervisor.

On two occasions in early May of 2011, Beasley found threatening messages ("You're gonna die") in his locker in the break room. On May 19, 2011, someone placed an offensive note in his locker ("you're a n****r – U

haitian n****r"), followed by a drawing of a monkey's head. Around the same time, a "racist" drawing was found in the employee's restroom (which an African-American co-worker, Julius Frank, believed was directed at him). Sometime thereafter, Beasley received a threatening telephone call while at work in the plumbing department.[1] Beasley reported some of these incidents to defendant Miller, the store's human resources manager. Miller undertook an investigation, interviewing Beasley and several other employees. Miller noted that Beasley "was very upset . . . . Does not know anyone who would do this, gets along with everyone. No one has been treating him any differently. Does not know anyone having a problem with Julius [Frank] who would take it out on him." Miller was unable to identify a perpetrator, and the incidents stopped. (That is, in May of 2011). Beasley Dep. 103.

In the fall of 2011, Beasley was approved to take FMLA leave. According to Beasley, prior to his return, Medico told other employees that Beasley needed to get back to work or he would lose his job.[2] Beasley Dep.

---

[1] Beasley testified that after answering a page, he heard an unfamiliar male voice say, "I know where you work at. You're going to die." Beasley Dep. at 121.

[2] Beasley testified that the comment was made in May of 2012, just before he resigned (Beasley Dep. at 14). Lowe's business records, however, show that Beasley's post-FMLA leave accommodations commenced in October of 2011. How Beasley came to know of Medico's comment during his absence is never made clear.

at 13-15. Beasley returned to work on October 12, 2011, as planned. On November 26, 2011, Beasley requested a work accommodation from Miller, namely to be exempted from heavy lifting and allowed to sit every ninety minutes. Miller granted the request and agreed to re-assess Beasley's physical condition in 30 days. *See* Defs.' Ex. L.

Beasley claims that sometime in October of 2011, Medico called him a "stupid n****r."[3] Beasley Dep. at 40-41. Beasley informed Miller of Medico's use of a racial epithet. (Medico denies making any offensive statement). Beasley avers that Medico retaliated by subjecting him to "a relentless campaign of racial harassment." Compl. ¶ 12. Beasley states that in April of 2012, a co-worker (Steve Coyne) told him that he "had a bull's-eye on [his] back" and that Medico was trying to get rid of him.[4] Compl. ¶ 13; Beasley Dep. at 64-66. Beasley alleges that Medico ordered him "do things out of

---

[3] In his statement of facts ("Uncontested Facts" ¶ 1 – Dkt #44), Beasley claims that he "was the target of repeated racial slurs by his supervisor which continued unabated after he reported them . . . ." In his deposition he testified that Medico used a racial slur only once in his presence, but said that other employees told him that Medico had uttered the slur on other occasions. Beasley has offered no admissible evidence (for example, affidavits from these former fellow employees) to substantiate the allegation. Beasley Dep. at 70-74.

[4] Beasley here as well has failed to produce any admissible evidence (for example, an affidavit from Coyne) to support the allegation.

[his] job title such as cutting wood," and complained (gratuitously) about the appearance of the plumbing department shelves. *Id.* at 111-118. Beasley also alleges that when he took three days from work to take a stress test in "March or April of 2012," Medico told co-workers Steve Coyne and Andlee Cribb that Beasley's medical condition was "faked."[5] Compl. ¶ 11; Beasley Dep. at 59. Finally, Beasley complains that Miller refused him permission to trade a work day in May or June of 2012 so that he could attend a NBA basketball game.[6]

Beasley's personnel file at Lowe's contains two written warnings – one for his failure to complete inventory replenishment sheets; the other a warning for poor attendance. These were written up in October and November of 2010. The file also contains nine commendations for job performance awarded between December of 2011 and May of 2012.[7] On March 3, 2012, Beasley received an increase in pay.

---

[5] True to form, Beasley offers no affidavits or testimony from Cribb or Coyne. Beasley Dep. at 59-60.

[6] Miller denied Beasley's request; Medico was uninvolved. It is not clear what the allegation is intended to establish. Beasley testified that the only person who ever retaliated against him at Lowe's was Medico. *See* Beasley Dep. at 26.

[7] Two of the commendations (dated December 29, 2011, and January 7, 2012) were signed by Medico.

Offering Miller "and the company all the best," Beasley submitted a letter of resignation to Miller on June 17, 2012, telling her that "resigning from [his] position at Lowe's . . . was not an easy decision. . . . The several years [he had] been at Lowe's had been very rewarding and he had enjoyed representing Lowe's," but Lowe's had not "treated him fairly" during the final three months of his employment.

Lowe's and Beasley's accounts of the circumstances of his resignation differ, although in nonmaterial respects. Beasley states that his resignation effectively amounted to a constructive discharge because he had become uncomfortable at the prospect of remaining at Lowe's. He also claims (somewhat inconsistently) that Miller warned him that he would likely be impacted by an anticipated layoff, and that by resigning, he would improve his chances of being recalled. Miller agrees that she told Beasley of the expected layoff, but states that Beasley told her that he had plans to move to Atlanta to care for his ill sister. His question whether if he did so, Lowe's would be willing to take him back, prompted her advice regarding a letter of resignation.[8]

---

[8] This statement is corroborated by Beasley's application for employment at Walmart in which he stated that he left Lowe's to "take care of [an] ill sister." Defs.' Ex. P.

Beasley left Lowe's on July 1, 2012, and applied for unemployment benefits. Lowe's (it is unclear from the record whether it was Miller or an Ernst and Young employee, Kim Pistole) told the Division of Unemployment Assistance (DUA) that Beasley had "quit" his job. Although Beasley was initially denied unemployment benefits, he appealed and DUA reversed course, after finding that he had "left work for good cause attributable to the employer or for an urgent, compelling, and necessitous reason which rendered his separation involuntary."[9] DUA Dec. at 2 (Dkt #43-3 at 31); Mass. Gen. Laws ch. 151A, § 25C(2). Beasley states that he looked for other employment for nearly a year, but that at least one of his applications was rejected because of "an untrue negative reference from Lowe's."[10] Eventually, he found a job at Walmart.

Beasley filed a charge of discrimination with the MCAD on December 10, 2012. Pursuant to a work-sharing agreement, the charge was cross-filed with the Equal Employment Opportunity Commission (EEOC). App. at 4-8 (Charge). On June 19, 2015, Beasley brought this action and notified the

---

[9] Lowes did not appear to defend the appeal before the DUA.

[10] Beasley provides no evidence to support the allegation that Lowe's said untrue things about him to a potential employer.

MCAD that he was withdrawing the charge. The MCAD dismissed the charge on December 18, 2015.

After completion of discovery, Lowe's filed this motion for summary judgment, asserting that Beasley has failed to administratively and factually support his claims of discrimination and that, in any event, his claims are time-barred.

DISCUSSION

In his Opposition, Beasley contends that the court is obliged to deny defendants' summary judgment motion because they "failed to provide discovery" and omitted evidence of "triable issue[s] of material fact," and that moreover, "as a matter of law," the court cannot require a "Plaintiff to assert a genuine issue for trial" without engaging in impermissible "burden-shifting." Pl.'s Opp'n at 7-8. Beasley is mistaken on both counts. First, the complaint about a truncated discovery process is simply untrue. The court extended the discovery schedule on two occasions and resolved several disputes that arose during the process, including Beasley's post-discovery motion to compel (which the court allowed in part). Notwithstanding, Beasley took no depositions and failed to provide defendants' counsel with the "medical records, employment records and witness testimony" that he agreed to furnish in his Initial Disclosures.

8

Second, Beasley (or more accurately, his counsel) misapprehends the law governing summary judgment. Federal Rule of Civil Procedure 56(c) "mandates the entry of summary judgment . . . upon motion against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-323 (1986). "[I]f a party resists summary judgment by pointing to a factual dispute on which it bears the burden at trial [e.g., an affirmative defense], that party must point to evidence affirmatively tending to prove the fact in its favor." *FDIC v. Elder Care Servs., Inc.,* 82 F.3d 524, 526 (1st Cir. 1996). Finally, a moving party is not required to prove a negative to avoid trial on a specious claim. *Carmona v. Toledo*, 215 F.3d 124, 133 n.8 (1st Cir. 2000).

**Statute of Limitations Defense: Federal Claims**

**Count I - Discrimination Claim under Title VII; Count VI – Retaliation in Violation of Title VII**

Lowe's maintains that Beasley failed to file all but his defamation claim within the applicable statutes of limitations. Focusing on the federal claims, this court agrees.[11] Beasley submitted his letter of resignation from Lowe's on June 17, 2012. Beasley filed this lawsuit on June 19, 2015.

---

[11] As an initial matter, federal law does not support Beasley's naming of Miller and Medico as defendants – Title VII does not provide for individual liability. *See Fantini v. Salem State Coll.*, 557 F.3d 22, 30 (1st Cir. 2009).

9

A charge must be filed with the EEOC (or cross-filed) within 300 days of the last complained-of discriminatory act.[12] *See Velazquez v. Developers Diversified Realty Corp.*, 753 F.3d 265, 277 (1st Cir. 2014). The timeliness requirement under § 2000e-5(e)(1) is "mandatory," unless an equitable basis for tolling can be shown. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109-110, 113 (2002). Beasley filed his charge with the MCAD on December 10, 2012. To be timely, Beasley must demonstrate that an act of discrimination and/or retaliation on the part of Lowe's occurred on or after February 11, 2012 (that is, 300 days prior to December 10, 2012).

The racially inflammatory notes and drawings were discovered in May of 2011. Medico's alleged use of a racial epithet occurred in October of 2011. The allegation that Medico "humiliated [Beasley] by spreading claims that he was malingering" and had "faked" the need for a stress test has no date or time frame attached to it. Compl. ¶ 11; Beasley Dep. 15. Even assuming that the remark was made sometime after February 10, 2012, "stray remarks in the workplace . . . , [when made] by nondecision makers [like Medico], or . . . by decision makers unrelated to the decisional process itself' normally are

---

[12] The lawsuit itself must be filed within 90 days after notice the EEOC (or MCAD) gives notice that the administrative charge has been dismissed or a right-to-sue letter is issued. *See* 42 U.S.C. § 2000e-5(f)(1).

insufficient to prove [an] *employer's* discriminatory animus." *Shorette v. Rite Aid of Maine, Inc.,* 155 F.3d 8, 13 (1st Cir. 1998) (emphasis added). *Suarez v. Pueblo Int'l, Inc.,* 229 F.3d 49, 56 n.5 (1st Cir. 2000) (same). *Bennett v. Saint Gobain Corp.,* 507 F.3d 23, 32-33 (1st Cir. 2007) (same). *See also Velazquez-Fernandez v. NCE Foods, Inc.*, 476 F.3d 6, 11-12 (1st Cir. 2007) (a sole remark by a non-decision maker could not support an inference of pretext); *González v. El Día, Inc.*, 304 F.3d 63, 69 (1st Cir. 2002) ("'[S]tray workplace remarks', as well as statements made either by nondecision makers or by decision makers not involved in the decisional process normally are insufficient, standing alone, to establish either pretext or the requisite discriminatory animus.").

According to Beasley's Complaint, the following three incidents between February and December of 2012 amounted to raced-based discrimination by Lowe's. First, "[i]n April of 2012, a co-worker informed Beasley that Medico and human resources officials were looking for ways to 'get rid of' him." Compl. ¶ 13. Second, "[i]n May or June [of 2012]" Miller would not permit a co-worker "to cover a shift so [Beasley] could attend an NBA championship game." *Id.* Third, in June of 2012, Miller coerced him into submitting a letter of resignation. *Id.* ¶ 8.

11

As thin as these allegations are, Beasley has failed to produce any admissible evidence that links any of these incidents to a racial animus. There are no sworn statements from any of the co-workers identified by Beasley in his deposition as his sources for a racially-motivated campaign to "get rid of him." With respect to Miller's refusal to approve a shift exchange, Beasley admitted at his deposition that an assistant manager ("Kevin") told him that, Miller was following a company policy, namely that "the corporate office would no longer allow employees to make agreements to cover each other's shifts." Beasley Dep. at 133. While Beasley states that "two days later [a] Caucasian employee was allowed to seek employee coverage for a shift," – specifically, he claims that Steve Coyne and someone named "Bernard" switched shifts without filling out any paperwork – he offers no admissible evidence of the fact. *Id.* at 134; Compl. ¶ 13. As for Miller's advice — that in light of the anticipated layoff, Beasley might be in a better position to reapply if he resigned before being laid off – there is no evidence that the advice was untrue or related in any way to Beasley's race.

Beasley states in his Complaint that "Miller, unnamed defendants and Lowe's Home Centers committed further discriminatory . . . acts by making derogatory statements about plaintiff which interfered with his job search and false and misleading statements in August 2012 to the Massachusetts

Division of Unemployment Assistance leading to a denial of benefits . . . ." Compl. ¶ 9. However, Lowe's statement to the DUA that Beasley voluntarily left its employment is consistent with the competent evidence – Beasley's resignation letter, his statements to Miller about his plan to move to Atlanta to care for his sister, and his sworn Walmart application giving the same reason for leaving Lowe's.[13] More pertinent, there is no evidence that

---

[13] In any event, Beasley's claim of constructive discharge is untenable. To find a constructive discharge, "an inquiring court must gauge whether the working conditions imposed by the employer had become so onerous, abusive, or unpleasant that a reasonable person in the employee's position would have felt compelled to resign*." Suarez v. Pueblo Int'l, Inc.*, 229 F.3d 49, 54 (1st Cir. 2000). The "ultimate test is one of objective reasonableness" and the "standard cannot be triggered solely by an employee's subjective beliefs, no matter how sincerely held." *Id.* While the racist notes and Medico's stray, repugnant remark were, if true, discomfiting, they are "too remote from the date of resignation . . . to constitute a constructive discharge." *Cabrera-Ruiz v. Rocket Learning, Inc.*, 852 F. Supp. 2d 154, 172 (D.P.R. 2012) (holding comments made six months before plaintiff's resignation were too remote), citing *Landrau-Romero v. Banco Popular de P.R.*, 212 F.3d 607, 613 (1st Cir. 2000) (holding seven months too remote); *Serrano-Nova v. Banco Popular de P.R.,* 254 F. Supp. 2d 251, 265 (D.P.R. 2003) (holding six months too remote). Beasley's only remaining accusation against Lowe's, that Miller's enforcement of a company policy against shift exchanges cost him the opportunity to see an NBA basketball game falls far short of the onerous, abusive, or unpleasant aspect of a work environment that would compel a reasonable person to resign under duress. *See Blackie v. Maine*, 75 F.3d 716, 725 (1st Cir. 1996) ("Work places are rarely idyllic retreats, and the mere fact that an employee is displeased by an employer's act or omission does not elevate that act or omissions to the level of materially adverse employment action.").

supports Beasley's allegations that Miller ever acted towards him in a racially hostile manner.[14]  *See* Beasley Dep. at 26-27, 86.

In the last sentence of his Opposition, Beasley states that "the continuing nature of the misconduct requires that this court consider acts which fall outside the limitations period."  Pl.'s Opp'n at 10.  To trigger the continuing violation doctrine in this Circuit, a plaintiff must demonstrate that at least one anchoring incident in a series of related incidents that, taken in their totality, had a discriminatory impact on the plaintiff, occurred within the limitations period.  *Shervin v. Partners Healthcare Sys.*, 804 F.3d 23, 34-35 (1st Cir. 2015).  As explained previously, there is no evidence of a racially-motivated anchoring event (other than unsupported and inconsistent allegations of discrimination) that falls within the limitations period – February 10, 2012 to December 10, 2012.

**Violations of the Family Medical Leave Act – Count II**

Beasley contends that Lowe's retaliated against him for his exercise of his rights under the FMLA.  The court notes that Lowe's gave Beasley the requested leave, approved his request for physical accommodations upon his return, and gave him a salary increase shortly afterwards.  But the fact that

---

[14] The effort to demonize Miller is at odds with Beasley's sworn testimony that Miller, unlike Medico, had never retaliated against him.  *See* n.6, *supra.*

the FMLA is governed by a two-year statute of limitations ends the discussion. *See* 29 U.S.C. § 2617(c)(1). Beasley's last day of work at Lowe's was July 1, 2012 – clearly the FMLA claims are time-barred.

**Massachusetts State Law Claims**

As there are no remaining foundational claims, and no other basis for federal jurisdiction, I will dismiss the remaining state claims without prejudice. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Although the state law pleading are, in my opinion, threadbare at best, there may be sufficient differences between federal and state law to justify a second look by a state court judge.[15] *See* 28 U.S.C. § 1367(c); *Licari v. Ferruzzi*, 22 F.3d 344, 351 (1st Cir. 1994). Plaintiff's counsel, however, should take mind of her duty under Rule 11 to support her rhetoric and allegations with competent evidence of actionable wrongdoing.

---

[15] Unlike Title VII, Chapter 151B provides on its face for individual personal liability. *Beaupre v. Cliff Smith & Assocs.*, 50 Mass. App. Ct. 480, 491 (2000). Also, Chapter 151B prohibits employers from retaliating against employees for engaging in protected conduct (opposing any unlawful practices or filing a charge), including the filing of internal grievances, as well as formal complaints, *Ritchie v. Dep't. of State Police*, 60 Mass. App. Ct. 655, 664-665 (2004), and requires (unlike Title VII's but-for causation) only that a plaintiff engaging in legally-protected conduct, suffer an adverse employment action, and that the two events be causally connected. *Mole v. Univ. of Massachusetts,* 442 Mass. 582, 591-592 (2004). A retaliation claim may succeed even where the underlying claim of harassment fails. *See Ritchie*, 60 Mass. App. Ct. at 664.

ORDER

For the foregoing reasons, defendants' motion for summary judgment is <u>ALLOWED</u> as to the federal claims (Count I, Count II, and relevant part of Count VI). The remaining state law claims are dismissed without prejudice. Plaintiff's attention is directed to Mass. Gen. Laws ch. 260, § 32; *see also DeSantis v. Commonwealth Energy Sys.*, 68 Mass. App. Ct. 759, 766 n.10 (2007) ("After dismissal of DeSantis's pendent State claims he was entitled to renew them in the Superior Court within one year."); *Thornton v. United Parcel Serv., Inc.,* 565 F. Supp. 2d 273, 285 n.21 (D. Mass. 2008), *aff'd*, 587 F.3d 27 (1st Cir. 2009) (same).

                                          SO ORDERED.

                                          /s/ Richard G. Stearns
                                          _____
                                          UNITED STATES DISTRICT JUDGE